UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-61214-CIV-SEITZ

TIFFANY (NJ), LLC,

        Plaintiff,

vs.

LIU DONGPING
and DOES 1-10,

        Defendants.      /

## ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AND CLOSING CASE

THIS CAUSE is before the Court on Plaintiff's Motion for Entry of Final Default Judgment. Plaintiff, Tiffany (NJ), LLC, moves for final default judgment against Defendant Liu Dongping d/b/a the domain names identified on the attached Schedule "A" (the "Subject Domain Names") for alleged violations of the Lanham Act, codified at 15 U.S.C. §§ 1114, 1125(a), and 1125(d), and the Copyright Act, codified at 17 U.S.C. §501. As Defendant has failed to appear, plead or otherwise defend this action, and given the documentary evidence submitted in support of its motion, the Court shall grant Plaintiff's Motion for Final Default Judgment.

### I. Factual and Procedural Background

Tiffany (NJ), LLC ("Tiffany") is a Delaware limited liability company, with its principal place of business in the United States located at 15 Sylvan Way, Parsippany, NJ 07054. (Compl. ¶ 2.) Tiffany is engaged in the manufacture, promotion, and distribution of high quality products, which have been sold throughout the United States. (Declaration of Steven Costello in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Authorizing Alternate Service of Process on Defendant ("Costello Decl. in

1

Support of Plaintiff's *Ex Parte* App.") ¶¶ 5-6 [DE 6-2].) Tiffany is, and at all times relevant hereto has been, the owner and/or exclusive licensee of all rights in and to the following nineteen Federally registered trademarks:

| Mark | Registration Number | Registration Date |
|---|---|---|
| TIFFANY & CO. | 0,023,573 | September 5, 1893 |
| TIFFANY | 0,133,063 | July 6, 1920 |
| TIFFANY & CO. | 1,228,189 | February 22, 1983 |
| TIFFANY | 1,228,409 | February 22, 1983 |
| TIFFANY & CO. | 1,283,306 | June 26, 1984 |
| *Paloma Picasso* | 1,460,510 | October 13, 1987 |
| ATLAS | 1,605,467 | July 10, 1990 |
| T & CO. | 1,669,365 | December 24, 1991 |
| PERETTI | 1,787,861 | August 17, 1993 |
| ELSA PERETTI | 1,799,272 | October 19, 1993 |
| [design] | 1,785,204 | August 3, 1993 |
| [design] | 1,804,353 | November 16, 1993 |
| [signature] | 1,807,381 | November 30, 1993 |
| TIFFANY & CO. | 1,968,614 | April 16, 1996 |
| [design] | 2,184,128 | August 25, 1998 |
| [design] | 2,359,351 | June 20, 2000 |

2

| | | |
|---|---|---|
| TIFFANY | 2,639,539 | October 22, 2002 |
| STREAMERICA | 2,677,403 | January 21, 2003 |
| ATLAS | 2,886,655 | September 21, 2004 |

which are registered in International Class 14, and are used in connection with the manufacture and distribution of, among other things, high quality jewelry such as bracelets, necklaces, pendants, earrings and rings, watches, cufflinks, money clips, and key rings (the "Tiffany Marks"). (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 4 and Composite Exhibit 1 attached thereto.) Additionally, Tiffany is the owner and/or exclusive licensee of all rights in and to the following six United States Copyright Registrations:

| Copyright Title | Registration Number | Registration Date |
|---|---|---|
| "Star" Earrings and Pendant | VA 156-781 | March 16, 1984 |
| Paloma's Kiss Earrings | VAu 127-656 | March 15, 1988 |
| Apple pendants | VA 515-041 | June 8, 1992 |
| Loving heart ring | VA 519-157 | August 3, 1992 |
| Large P-P heart pendant | VA 596-557 | August 3, 1992 |
| Double Loving Heart | VA 1-189-959 | July 16, 2002 |

for works in which Tiffany's copyrighted designs appear (the "Tiffany Copyrights"). (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 4 and Composite Exhibit 2 attached thereto.)

Defendant has advertised, offered for sale, and/or sold jewelry, including bracelets, necklaces, pendants, earrings and rings, watches, cufflinks, money clips, and key rings, bearing counterfeits, reproductions, and/or colorable imitations of the Tiffany Marks and the works protected by the Tiffany Copyrights. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 9-14; Declaration of Jason Holmes in Support of Plaintiff's *Ex Parte* Application for Entry of

3

Temporary Restraining Order and Preliminary Injunction and Order Authorizing Alternate Service of Process on Defendant ("Holmes Decl. in Support of Plaintiff's *Ex Parte* App.") ¶¶ 4-7 [DE 6-5]; and relevant web pages from Defendant's Internet websites operating under the Subject Domain Names ("Defendant's Websites") attached as Composite Exhibit 1 to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Authorizing Alternate Service of Process on Defendant ("Gaffigan Decl. in Support of Plaintiff's *Ex Parte* App.") [DE 6-3 and DE 6-4].) Defendant is not now, nor has he ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Tiffany Marks or the works protected by the Tiffany Copyrights. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 9.)

Plaintiff retained Jason Holmes ("Holmes") of IPCybercrime.com, LLC, to investigate suspected sales of counterfeit Tiffany branded products by Defendant. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 10; Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 3.) In May 2010, Holmes accessed the Internet website operating under the domain name tobling.com, and placed an order for the purchase of a Tiffany branded Heart Tag key ring. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 4 and Composite Exhibit 1 attached thereto.) Holmes' purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 4-6 and Composite Exhibits 1-3 attached thereto.) Holmes was able to communicate only electronically in connection with his purchase of the Tiffany branded Heart Tag key ring from the tobling.com website. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 5-6.) Specifically, Holmes exchanged e-mail communication with Defendant via his

4

customer service e-mail address sales@tobling.com. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 5-6 and Composite Exhibits 2-3 attached thereto.) Holmes traced the e-mail communication to a computer terminal located in China, with an IP address of 113.240.16.7. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 6 and Exhibit 3 attached thereto.)

Thereafter, Holmes received a package containing the Tiffany branded Heart Tag key ring he purchased from the tobling.com website, which was shipped directly to his address located in Wilton Manors, Florida. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 7.) The package contained a Tiffany branded pouch, gift box and gift bag, which were included with Holmes' purchase from the tobling.com website. (Holmes Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 7 and Composite Exhibit 4 attached thereto.)

Subsequently, Plaintiff's representative inspected and analyzed the Tiffany branded Heart Tag key ring, pouch, gift box and gift bag purchased and received by Holmes and determined them to be non-genuine Tiffany products. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 13.) The analysis included review of the workmanship and materials used to make the products, the marks used on the products, and the overall quality of the products themselves. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 13.) Additionally, Costello reviewed and visually inspected the items bearing the Tiffany Marks offered for sale on the Internet websites operating under the Subject Domain Names and determined the products were non-genuine Tiffany products. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 14.) Through his visual inspection, Costello also determined that the designs of the Tiffany branded products offered for sale on the websites were exact duplicates of the works protected by the Tiffany Copyrights. (Costello Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 14.)

On July 14, 2010, Plaintiff filed its Complaint against Defendant for federal trademark

counterfeiting and infringement, false designation of origin, cyberpiracy, and copyright infringement [DE-1]. On July 15, 2010, Plaintiff filed its *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction and Order Authorizing Alternate Service of Process on Defendant [DE-6]. On July 20, 2010, this Court entered an Order Granting *Ex Parte* Relief for Alternative Service authorizing Plaintiff to serve the Summons, Complaint, and all subsequent pleadings and discovery in this case upon Defendant via e-mail, and via publication by posting a copy of the Complaint and Summons on the Internet website http://tiffanytrademarkenforcement.com/dongping/ . Additionally, on July 20, 2010, this Court issued an Order Granting Temporary Restraining Order *Ex Parte* [DE-10] and temporarily restrained Defendant from infringing the Tiffany Marks at issue. The Court further ordered Plaintiff to serve a copy of its *Ex Parte* Application and the Court's July 20, 2010 Order on Defendant via his known e-mail addresses and by posting a copy of the *Ex Parte* Application and the Court's July 20, 2010 Order on the Internet website http://tiffanytrademarkenforcement.com/dongping/. Notices of compliance with the Orders were filed on July 21, 2010 [DE-13 and DE-14], certifying service of the *Ex Parte* Application and supporting papers, the Court's July 20, 2010 Order, and the Summons and Complaint upon Defendant on July 21, 2010. On August 2, 2010, the Court entered an Order granting Plaintiff's Application for a Preliminary Injunction [DE 23].

      Pursuant to the Court's Order authorizing alternate service, Plaintiff served Defendant with copies of the Summons and Complaint via e-mail and publication on July 21, 2010. Plaintiff filed the Proof of Service as to Defendant on July 21, 2010. (*See* DE 14 and DE-15). On August 19, 2010, the Clerk of Courts, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, entered a default against Defendant for failure to appear, plead, or otherwise defend

this action. (*See* DE 27.) To date, Defendant has not sought to vacate the default or otherwise appear and defend this action. On October 19, 2010, Plaintiff filed and served the instant motion for entry of final default judgment, to which Defendant has also failed to respond.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant, who, like Defendant here, failed to file a timely responsive pleading. By such a default, all of Plaintiff's well-pled allegations in the Complaint are deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Petmed Express, Inc. v. Medpots.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages. Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Petmed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). In this case, a hearing on damages is unnecessary as Plaintiff seeks statutory damages and has submitted detailed declarations with accompanying documentary evidence in support of its damages request.

## III. LIABILITY

### A. Trademark Infringement

The allegations in Plaintiff's Complaint, in conjunction with record evidence, support a finding of liability against Defendant for trademark infringement. "[T]o prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority; (2) defendant used

7

its mark in commerce [without consent]; and (3) defendant's mark is likely to cause consumer confusion." *Petmed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1243 (11th Cir. 2002) and *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999)). Plaintiff has established each of these elements because Plaintiff's ownership and registration of the nineteen trademarks at issue precede Defendant's infringing conduct (Compl. ¶ 9; Costello Dec. in Support of Plaintiff's *Ex Parte* App.¶ 4), Defendant advertised, offered for sale and/or sold nine types of goods bearing Plaintiff's marks in interstate commerce without Plaintiff's consent (Compl. ¶ 21; Costello Dec. in Support of Plaintiff's *Ex Parte* App. ¶¶ 9-14), and the marks used on the goods Defendant advertised, offered for sale and/or sold are so similar to Plaintiff's marks that consumer confusion is likely (Compl. ¶¶ 23, 31, Defendant's Websites attached as Composite Exhibit 1 to the Gaffigan Decl. in Support of Plaintiff's *Ex Parte* App.)

### B.     False Designation of Origin

Plaintiff alleges false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

8

15 U.S.C. § 1125(a)(1).

The same set of facts allowing Plaintiff to prevail under Section 1114(1)(a) will result in recovery under Section 1125. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *see also Clairol Inc. v. Save-Way Indus., Inc.*, 210 U.S.P.Q. 459, 469-70 (S.D. Fla. 1980). "This is because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement." *Babbit Elecs.*, 38 F.3d at 1181 (citing *Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982)). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 763 (1992). As discussed above, Plaintiff has sufficiently shown there is a strong likelihood of confusion that arises because of the use by Defendant of the Tiffany Marks. Thus, Plaintiff is entitled to default judgment on its false designation of origin claim.

C. **Cyberpiracy**

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), imposes liability upon a person for the bad faith intent to profit from a protected mark by registering or using a domain name that is identical or confusingly similar, or dilutive of, that mark. *Petmed Express*, 336 F.Supp.2d at 1218. To prevail under 15 U.S.C. § 1125(d), Plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the Defendant's domain name is identical or confusingly similar to the Plaintiff's mark; and (3) the Defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace,*

*S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x 252, 256, 2006 WL 2847233, *3 (11th Cir. 2006). In this case, the well-pled allegations demonstrate Plaintiff's Marks are distinctive and famous, that the infringing domain names are confusingly similar, and that Defendant registered the domain names with the bad-faith intent to profit from them. As such, Defendant is liable for cyberpiracy under 15 U.S.C. § 1125(d).

### D. Copyright Infringement

To prevail on its claim of copyright infringement, Plaintiff must show: (1) that it owns valid copyrights in the designs in question; and (2) that Defendant copied original elements of the copyrighted materials. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).[1] Here, Plaintiff has shown that it owns valid copyrighted materials (Compl. ¶ 9; Costello Decl. in Support of Plaintiff's Ex Parte App. ¶ 4 and Composite Exhibit 2 attached thereto), and that Defendant's websites offered for sale designs that were "exact duplicates" of the designs protected by Plaintiff's six copyrights. (Costello Decl. in Support of Plaintiff's Ex Parte App. ¶ 14.) Being unopposed, this is sufficient to establish liability for copyright infringement.

### IV. INJUNCTIVE RELIEF

Plaintiff is entitled to the requested injunctive relief pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 502. A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to

---

[1] Even if the copying is not done by Defendant himself, copyright liability can be established under theories of vicarious or contributory infringement. To establish a prima facie case of vicarious infringement, a plaintiff must establish: (1) that defendant profited from a direct infringement; and (2) that defendant had the right to stop or limit the infringement but did not. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *see also Playboy Enterprises, Inc. v. Starware Publishing Corp.*, 900 F. Supp. 438, 440-41 (S.D. Fla. 1995). And to establish a prima facie case of contributory infringement, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. *See Grokster*, 545 U.S. at 930; *Costar Group, Inc. v. Loopnet Inc.*, 373 F.3d 544, 550 (4th Cir. 2004).

compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390 (2006).

Here, the well-pled allegations and record evidence demonstrate that Plaintiff has developed goodwill among the consuming public which would be undermined if Defendant is not prohibited from further infringement. Defendant's counterfeit products will create irreparable harm and confusion, particularly because the counterfeit products bear identical markings as real Tiffany merchandise, and are not manufactured to Tiffany's quality standards. Furthermore, Defendant willfully infringed the Tiffany Marks and continued to do so even after service of the Complaint in this matter upon him. Such willful conduct demonstrates a likelihood that Defendant would continue to harm Plaintiff's trademarks if the Court declined to issue an injunction. *See Petmed Express*, 336 F. Supp. 2d 1222-23 (entering permanent injunction under 15 U.S.C. § 1116 to prevent further infringement of federally-protected trademarks).

## V. DAMAGES

### A.   Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 and not more than $200,000.00 per counterfeit mark per type of good. In addition, if the Court finds that Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). A statutory damage award is appropriate in a case where the defendant has defaulted.

*See Petmed Express*, 336 F. Supp 2d at 1219-22. Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *Id.* at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (concluding that the court's discretion in setting the amount of copyright damages is "wide, constrained only by the specified maxima and minima")). Congress enacted a statutory damages remedy in trademark counterfeiting cases, because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.). This case is no exception. Since Defendant has refused to participate in this litigation, Plaintiff has been deprived of the ability to obtain discovery from him.

In this case, Plaintiff is entitled to a statutory award of $3,000.00 per Tiffany Mark counterfeited (19) per type of goods sold (9 - bracelets, necklaces, pendants, earrings, and rings, watches, cufflinks, money clips, and key rings). Thus the Court shall award $513,000.00 in statutory damages pursuant to 15 U.S.C. § 1117.[2]

### B. Statutory Damages for Cyberpiracy

Plaintiff also seeks damages for violation of the Anticybersquatting Consumer Protection Act. Upon a finding of liability for cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

Here, Plaintiff seeks statutory damages in the amount of $10,000.00 for each of the eight

---

[2] In determining the appropriate damages award, the Court also considered the demonstrated willfulness of Defendant's infringement.

domain names violating the provisions of 15 U.S.C. 1125(d)(1) for a total award of $80,000.00. Defendant has registered the domain names at issue in bad faith in violation of 15 U.S.C. § 1125(d). (Complaint ¶ 44.) In view of Defendant's intentional, wrongful conduct, the Court finds that Plaintiff's request is reasonable. *See Taverna Opa Trademark Corp. v. Ismail*, Case No. 08-20776-CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue). Thus, the Court shall award Plaintiff $80,000.00 in statutory damages pursuant to 15 U.S.C. § 1117(d).

### C. Statutory Damages for Copyright Infringement

Statutory damages for copyright infringement are to be (1) not less than $750.00 or no more than $30,000.00 with respect to any one work, as the Court considers just; or (2) if the Court finds the infringement willful, not more than $150,000.00. *See* 17 U.S.C. § 504(c). The Court possesses wide discretion in determining the amount of statutory damages within the given statutory range. *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

In this case, Plaintiff is entitled to a statutory damage award of $30,000.00 for each of the six copyrights violated. Thus the Court shall award $180,000.00 in statutory damages pursuant to 17 U.S.C. § 504.

## VI. COSTS

Both the Lanham Act and the Copyright Act authorize the award of costs. Plaintiff requests costs totaling $700.00 resulting from filing the Complaint and process server fees. The Court shall award $700.00 in costs, finding this to be a reasonable amount.

## VII. CONCLUSION

For the reasons stated above, it is hereby

ORDERED THAT:

1. Plaintiff's Motion for Entry of Final Default Judgment is GRANTED.

2. Final Default Judgment in favor of Plaintiff Tiffany (NJ), LLC shall be ENTERED against Defendant Liu Dongping, with a separate Final Judgment.

3. This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 29 day of October, 2010.

PATRICIA A. SEITZ
United States District Judge

cc: All Counsel of Record

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

aheadtrade.com
besttifany.com
joytiffany.com
kissbrand.com
linksfromlondon.com
myetiffany.com
silverheight.com
silversilvers.com
sliveronline.com
tiffany4sale.org
tiffanybetter.com
tiffanyjewellerybuy.com
tiffanylike.com
tiffanywooer.com
tobling.com
toobling.com
toopeshop.com
victoriaclassic.com